UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Jonathan Alvarez-Vega on behalf on his minor child, E.A.L.<br><br>    Plaintiff(s)<br><br>v.<br><br>[1] CORPORACION PARA EL DESARROLLO DE LAS BELLAS ARTES DEL MUNICIPIO DE GUAYNABO, C.D.<br><br>[2] TICKET CENTER, INC.<br><br>    Defendant(s) | **CIVIL ACTION** |

**COMPLAINT**

1.    This is a civil rights action by plaintiff Jonathan Alvarez Vega on behalf of his minor child, E.A.L. ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Centro de Bellas Artes de Guaynabo
> Carazo Street, Esq. Las Cumbre Avenue
> Guaynabo, Puerto Rico
> (hereafter "the Facility")

2.    Plaintiff seeks injunctive and declaratory relief, attorney fees and costs, against CORPORACION PARA EL DESARROLLO DE LAS BELLAS ARTES DEL MUNICIPIO DE GUAYNABO, C.D., a corporation, partnership or sole proprietorship doing business as Centro de Bellas Artes de Guaynabo and TICKET CENTER, INC., a corporation, doing business as Ticket Center, also known as tcpr.com (hereinafter

collectively referred to as "Defendant" or "Defendants"), pursuant to the Americans with Disabilities Act of 1990 ("ADA").

## JURISDICTION

3.   This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.   Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## VENUE

5.   All actions complained of herein take place within the jurisdiction of the United States District Court for the District of Puerto Rico, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

6.   Defendant(s) own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

7.   Plaintiff congenital condition is Muscular dystrophy. In muscular dystrophy, abnormal genes (mutations) interfere with the production of proteins needed to form healthy muscle. Plaintiff requires the use of a wheelchair when traveling about in public. Consequently, Plaintiff is "physically disabled," as defined by all applicable United States laws, and a member of the public whose rights are protected by these laws.

## FACTS

8.   The Facility is a public accommodation facility, open to the public, which is intended for nonresidential use and whose operation affects commerce. Plaintiff lives in Bayamon, Puerto Rico, approximately 25 minutes away from the Facility by motor vehicle. Prior to instituting this action, Plaintiff was aware that he is unable to patronize the Facility on a full and equal basis. Prior to instituting this action, Plaintiff observed that the purportedly accessible parking space were inadequate and the assembly area was not adequately

accessible for Plaintiff. Plaintiff knows the area were the Facility is located very well and the minor has been inside the Facility.

9.   Plaintiff visited the Facility and encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. Plaintiff personally encountered the following barriers at the Facility during Plaintiff's visit to the Facility on several dates:

   a)   Plaintiff observed that there is no adequate van-accessible parking space for the disabled. However, there are parking spaces available for the abled-bodied community. Section 4.1.2 (5) (b) of the ADAAG mandates that always at least one accessible parking    space    must    be van-accessible ("One    in    every eight accessible spaces, but not less than one, shall be served by an access aisle 96 in (2440 mm) wide minimum and shall be designated 'van accessible'").

   b)   Plaintiff observed that there is no adequate access aisle adjacent to a van-accessible parking space for the disabled. The access aisle is the surface adjacent to the accessible parking space designated for handicapped people, which must be at the same elevation level. This area must be marked and free of obstruction, also with a minimum wide of 60" (car accessible) or 96" (van-accessible), required by ADAAG-2010. Also, no access aisle connects with an accessible route to the entrance of the Facility.

   c)   No adequate number of wheelchair spaces are provided in the assembly area. Section 221.2.1 of the ADAAG mandates that assembly areas (theaters,

auditoriums, stadiums, etc.) must have provide an adequate number of wheelchair spaces.

d)  Wheelchair spaces are not dispersed to allow location choices and viewing angles equivalent to other seating, including specialty seating areas that provide distinct services and amenities. Section 221.2.3 of the ADAAG.



e)  In some events, people are expected to remain seated at the assembly area (see image below), but people in wheelchair do not have a clear line of sight over and between the heads of others in front of them, in violation of  Section 802.2.1 and 802.1.1.2 of the ADAAG.



f)  In some events, people are expected to stand (see image below), but people in wheelchair do not have a clear line of sight over and between the heads of others in front of them, in violation of Section 802.2.2.1, 802.1.2.2 of the ADAAG.



**g)** There are no adequate seats in violation of the following sections of the ADAAG: 802.1.2, 802.1.3, 802.1.4, 221.3, 802.3.1, 802.3.2,

10.   The barriers identified in paragraph 9 herein are only those that Plaintiff personally encountered. It is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford his full and equal access. Plaintiff is also aware of the following barriers which exist at the Facility and relate to his disabilities:

a)   This property fails to comply with: Parking Sign. ADA compliant parking signage is inadequate.

b)   This property fails to comply with: *Location of accessible parking spaces*. Accessible parking spaces must be located on the shortest accessible route of travel to an accessible facility entrance.

c)   A properly configured route of travel is not provided from the building entrance/exit to exterior participation areas.

d)   A properly configured accessible route is not provided from the designated accessible parking and public right of way to the designated accessible building entrance.

e)   Cross slopes along exterior route of travel exceed the maximum allowable.

11.    Defendant Ticket Center, Inc. (tcpr.com) is an operator of a box office and ticket processing service for events at Centro de Bellas Artes de Guaynabo. The plaintiff is not allowed to buy accessible tickets at regular price (or discounted price) on https://tcpr.com.  Accessible tickets are not available through https://tcpr.com.  However, non-accessible tickets are available for purchase on https://tcpr.com.   Because of defendant's policy, accessible seat tickets are not available for every Ticket Center ticketed event through the normal purchase process on https://tcpr.com  Instead, individuals with disabilities are instructed to buy accessible seat tickets at the box office in accordance with the following written policy:




 ENGLISH    SPANISH

## Senior and Disability Discounts

If the event will take place at a venue owned or operated by the Commonwealth of Puerto Rico, (i) a minimum of 5% of the total tickets on sale will be reserved for each function, available until 72 hours before the event, to be sold at a 50% discount of the regular price to legal residents of Puerto Rico who are 65 years or older; and (ii) disabled persons will be granted a 50% discount on the regular price of the ticket. These discounts are subject to applicable laws and regulations, must be purchased in person, and require the presentation of (i) a Valid government ID that includes picture and date of birth, in the case of persons who are 65 years or older; or (ii) the disability ID issued by the Department of Health of Puerto Rico that certifies the disability, in the case of persons with disabilities. Tickets purchased with these discounts will contain special markings, and persons seeking admission with such tickets will be required to show the Valid ID or disability ID at the time of admission to the event. DISCOUNTS APPLY ONLY TO THE FACE VALUE OF THE TICKET AND NOT TO ANY SERVICE CHARGES AND APPLICABLE SALES TAX (IVU).

Service Charges / Taxes Tickets purchased through Ticket Center's Network are subject to certain service charges. Each ticket or merchandise that you purchase through the Ticket Center will be subject to a service charge. Each order made through Ticket Center's Network will also be subject to a service charge, regardless of the number tickets or articles included in the order. The service charge imposed per order may vary depending on where you purchase your ticket (Internet, telephone, outlet, etc.). For some events, a promoter service charge may be charged. There are also additional and optional services, which may involve additional charges, such as US Priority Mail Delivery, Print@Home, Mobile tickets, etc. All service charges will be listed on your purchase receipt (some may be consolidated in a single line item). The computerized ticketing system is configured to generate the service charges and corresponding Taxes (IVU) automatically. If you have any questions relating to these service charges you can inquire with the sales representative that sold you the tickets or contact us at (787) 622-4555 during office hours or via email at orders@tcpr.com.

## REFUND POLICY

12. Upon information and belief, the transition plan, or lack thereof, fails to comply with the requirements of 28 C.F.R. §35.105 Section II-5.3000 and otherwise violates the ADA by failing:

   a. to conduct a self-evaluation of its services, policies, and practices make modifications necessary to comply with the Department's Title II regulations (28 C.F.R. Part 35), 28 C.F.R. §35.105; (The self evaluation of the venue is incomplete or is inexistent) II-8.2000 Self-evaluation.

   b. to notify applicants, participants, beneficiaries, and other interested persons of their rights and the Defendant's obligations under Title II and the Department's regulations, 28 C.F.R. §35.106; (The "Transition Plan" does not show or detail how or when notice has been given to interested parties) II-8.4000 Notice to the public.

   c. to designate a responsible employee to coordinate its efforts to comply and carry out the Defendant's ADA responsibilities, 28 C.F.R. § 35.107(a); (No individual has been designated as the responsible entity.) II-8.5000 Designation of responsible employee and development of grievance procedures.

   d. to establish a grievance procedure for resolving complaints of violations of Title II, 28 C.F.R. § 35.107(b); (No grievance procedure has been delineated.)

13. Defendant's facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards. 28 C.F.R. § 36.406;  28 C.F.R., pt. 36, app. A.

14. Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff need the type of goods and services offered at the Facility to enjoy the shows and performances at Centro De Bellas Artes de Guaynabo on a full and equal basis, and will return to the Facility once the barriers are removed.

15.     Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to remove those barriers.

16.     At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 2010 Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

17.     Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance

that Defendants' property continues to exist in its non-compliance state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## CAUSE OF ACTION

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

18.   Plaintiff incorporates the allegations contained in paragraphs 1 through 14.

19.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

20.   Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

21.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

22.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

23.   Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

24.   In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

Failure to Design and Construct an Accessible Facility

25.   Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

26.   The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

27.   Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.

Failure to Make an Altered Facility Accessible

28.   Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

29.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's

primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

30.    Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

31.    The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

32.    Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

33.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A.    A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs or limited mobility;

B.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its facilities are fully accessible to, and independently usable by, individuals who use wheelchairs or individuals with limited mobility, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant's facilities come into compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

C.  Payment of costs of suit;

D.  Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

E.  The provision of whatever other relief the Court deems just, equitable and appropriate.

**RESPECTFULLY SUBMITTED**,

**/S/JOSE CARLOS VELEZ-COLÓN, ESQ.**
**USDC-PR NO.: 231014**
jcvelezcolon@gmail.com

PO BOX 2013
BAYAMON PR 00960

TEL: (787) 599-9003

*Attorney for Plaintiff*