IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: CASES FILED UNDER THE AMERICANS WITH DISABILITIES ACT BY JONATHAN ALVAREZ-VEGA | Civil No. 17-1600 (PAD/BJM)<br>Civil No. 15-2564 (PAD/BJM)<br>Civil No. 15-2864 (PAD/BJM) |

**AMENDED REPORT AND RECOMMENDATION**

Jonathan Alvarez-Vega ("Alvarez") brought these cases against a number of different places of public accommodation, alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189. On July 24, 2017, Judge Pedro A. Delgado-Hernández referred Civil Nos. 17.1600, 15-2564 and 15-2864 to me for a hearing and report and recommendation to determine whether the cases are frivolous or malicious pursuant to 28 U.S.C. §1915(e)(2)(B)(i). Case No. 17-1600, Dkt. 14. I held a hearing on April 17, 2018 where I heard the testimony of Alvarez, a client of Attorney Jose Carlos Velez-Colon ("Velez") who also represents other ADA plaintiffs in this District. Case No. 17-1600, Dkt. 57. For the reasons below, I find that this case was not brought in violation of 28 U.S.C. §1915(e)(2)(B)(i).

**BACKGROUND**

Alvarez is a thirty-six-year-old resident of Bayamón, Puerto Rico and the father of a minor who is wheelchair bound due to congenital muscular dystrophy. Alvarez has been dealing with his son's disability since he was born; as his son has gotten older, he has realized the extent of the accessibility issues his son faces. Seeking to learn more about the legal aspects of disability, Alvarez sought legal help. The first attorney's office he visited was Velez's; they had never met or communicated prior to that, and Alvarez did not know that Velez handled ADA cases he entered the office. Alvarez and Velez discussed the day-to-day situations Alvarez's son experienced, and Alvarez told Velez about some specific locations and asked whether they might be ADA noncompliant. Velez gave Alvarez specific examples of noncompliance in other locations, to help Alvarez orient himself to the law and its potential impact on his son's daily life. After the discussion, Alvarez retained Velez, and they began to move forward with ADA complaints. Alvarez has a written agreement authorizing Velez to represent him, and he has not signed an

agreement with anyone else. Alvarez cannot afford an attorney or an expert witness and has never paid Velez any money.

When Alvarez begins a case with Velez, he reviews the complaint and discusses it with Velez so that Alvarez can understand it in plain language. Thus far, Alvarez has brought about ten cases under the ADA on his son's behalf including against Plaza del Sur, Caribbean Cinemas, Redondo Plaza, and Bonanza on Route 167 in Bayamón. Alvarez visited the greater majority of the establishments with his son before he filed suit against them, though he had not visited all of them. Alvarez has filed these lawsuits so that defendants will repair their facilities or have them "done in such a way that my child, when he becomes an adult, they are accessible to him and that he can use them." He has not asked for monetary or other kinds of compensation but is aware the ADA provides for attorneys' fees and costs for Velez, which includes paying the expert they sometimes consult. Alvarez has not received payment from his attorney for being a plaintiff and has not received any other benefit besides defendants improving facilities to make them accessible.

The settlements in these cases match the Alvarez's testimony regarding his expectations of the cases and purpose in filing suit. The settlements require defendants to make certain adjustments and repairs to their facilities to ensure accessibility, such as ensuring at least one table is at a wheelchair-appropriate height and widening parking spaces. Some, though not all, require the payment of costs and attorney's fees. No settlement provides damages or compensation to Alvarez.

In addition to filing cases under the ADA on behalf of his son, Alvarez is involved with other disability rights work. He has met with the governor's staff and spoken to architecture students about his son's experiences to bring attention to the problems that inaccessible designs pose to people with disabilities.

**DISCUSSION**

The ADA's purpose is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). As a remedial statute, the First Circuit follows traditional canons of statutory interpretations and construes it broadly. *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003) (citing

*Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967)). The ADA provides for a private right of action and injunctive relief as remedies for people who are subjected to discrimination on the basis of their disability. 42 U.S.C. § 12188(a). The combination of broad interpretation, plaintiff-friendly provisions, and potential for an attorneys' fee award has made ADA lawsuits ripe for abuse. *See* Helia Garrido Hull, *Vexatious Litigants and the ADA: Strategies to Fairly Address the Need to Improve Access for Individuals with Disabilities*, 26 Cornell J. L. & Pub. Pol'y 71, 72 (Fall 2016).

The three ADA cases before the court for determination of whether the cases are frivolous or malicious share similar facts, a plaintiff, and plaintiff's attorney. All three cases have been dismissed with prejudice in light of settlements reached by the parties. Case No. 15-2654, Dkt. 25; Case No. 15-2864, Dkt. 40; Case No. 17-1600, Dkt. 72. Jurisdiction over the dismissed cases must be determined before it is possible to reopen them for evaluation under § 1915(e).

**Jurisdiction over Dismissed Cases**

Orders dismissing these cases were issued pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). A plaintiff "may dismiss an action without a court order by filing: a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. Pro. 41(a)(1)(A)(i)–(ii). Alvarez moved to dismiss with prejudice Case No. 15-2564 after one defendant never responded to its complaint and the other reached a settlement agreement. Dkts. 22, 24. Alvarez similarly moved to dismiss with prejudice Case No. 15-2864 pursuant to Rule 41(a)(1)(A)(ii). Dkt. 39. The final case, No. 17-1600, had claims against one defendant dismissed after settlement, Dkt. 20, and the other two dismissed without prejudice because the facilities at issue remain closed to the public after Hurricane María. Dkts. 67, 71.

In the absence of clear federal question or diversity jurisdiction over a matter, federal courts may assert ancillary, or supplemental, jurisdiction. Ancillary jurisdiction has been used for two main purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian*

*Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994) (internal citations omitted). In *Kokkonen*, the Supreme Court declined to extend federal jurisdiction to a case which the district court had dismissed with prejudice after the parties settled. *Id*. at 376. The Court found that a subsequent breach of that settlement agreement was outside even the federal court's ancillary jurisdiction because it had been dismissed with prejudice. *Id.* at 380. Although the question before me concern the origins of the cases rather than a settlement breach, the reasoning remains the same. Despite the federal courts' inherent powers, a dismissal pursuant to Rule 41 is absolute unless the court has incorporated certain provisions in its order that might allow it to retain jurisdiction. *See id.* at 381–82. Otherwise, the finality of a dismissal with prejudice leaves the court with "nothing to do but execute the judgment." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 86 (2000); *accord Quincy V, LLC v. Herman,* 652 F.3d 116, 120–21 (1st Cir. 2011) (federal courts may enforce contract settlements only if embedded in a judgment or over which they maintained jurisdiction; otherwise, an independent basis for federal jurisdiction is required) (citing *Lipman v. Dye,* 294 F.3d 17, 21 (1st Cir. 2002)). In *Green Tree*, the Supreme Court noted that "the order plainly disposed of the entire case on the merits and left no part of it pending before the court." *Id.* at 86. For that reason, the decision was final. *Id.* Similarly, in the three cases referred to me, the dismissal with prejudice orders provide only for dismissal—the court did not expressly retain jurisdiction over any aspect. No. 15-2654, Dkt. 25; No. 15-2864, Dkt. 40; No. 17-1600m Dkt. 20.

The Court in *Green Tree* went on to distinguish dismissals with prejudice from administrative closings, which are more akin to staying a case and permit the possibility of reopening. *See Freeman v. Pittsburgh Glass Works, LLC,* 709 F.3d 240, 246–47 (3d Cir. 2013). The First Circuit described an administrative closing as having "no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository." *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 392 (1st Cir. 1999). Both the parties and the court retain the power to reinstate an administratively closed case. *See id.* An administrative closing, therefore, provides the "independent basis for federal jurisdiction" necessary to resurrect a case; a dismissal with prejudice does not. *Kokkonen*, 511 U.S.

at 381. This comparison underscores the finality of a dismissal with prejudice.

Rule 40, however, is not the end all, be all when it comes to final judgments. Federal Rule of Civil Procedure 60 offers methods by which parties may be granted relief from final judgments, orders, and proceedings. The court, on motion and just terms, may relieve a party from a final judgment in certain circumstances. Fed. R. Civ. Pro. 60(b). Of these circumstances, Rule 60(b)(3), fraud, misrepresentation, or misconduct, and Rule 60(b)(6), a catch-all provision, most readily lend themselves to the instant case, but circuits are split on whether district judges may grant such relief *sua sponte*. *Van Cannon v. United States*, 890 F.3d 656, 661 (7th Cir. 2018) (The Sixth and Tenth Circuits require a party motion to vacate a judgment; the Second, Fourth, Fifth, Seventh, Eighth, and Ninth Circuits permit the district court to act on its own motion). Moreover, the majority of circuit court decisions considering *sua sponte* authority premise their holding on whether parties receive notice of the district court's intent prior to the new order. *Pierson v. Dormire*, 484 F.3d 486, 492 (8th Cir. 2007), *rev'd in part on other grounds*, *Pierson v. Dormire*, 276 Fed. Appx. 541 (8th Cir. 2008) (per curiam). The distinction between the instant cases and precedent cases is not whether parties have notice. Alvarez has notice of the potential proceedings and even testified at a hearing with Velez present. Case No. 17-1600, Dkt. 57. The crux of the matter here is whether a court may, *sua sponte*, reopen closed cases in order to examine whether closed cases might form a pattern of frivolous or malicious prosecution, constituting "misconduct" or otherwise justifying relief under Rule 60(b).

The First Circuit has declined to decide whether Rule 60(b) permits *sua sponte* relief. *Quincy V*, 652 F.3d at 121; *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33, 37 (1st Cir. 2006). The closest decision the First Circuit has made underscores the importance of the final judgment language. In *Quincy V*, "the district court reasonably construed the motion to enforce as an implicit Rule 60(b) motion to reopen," so the First Circuit found that the court had retained jurisdiction over the settlement. *Quincy V*, 652 F.3d at 121. As stated, the court did not explicitly retain jurisdiction in any of the closed cases before the court. Nor, does it appear, could any of the dismissal orders be "reasonably construed" as retaining jurisdiction over the initial filings.

Accordingly, the court should find that it lacks jurisdiction to determine whether Case Nos. 15-2654, 15-2864, and 17-1600 are frivolous or malicious.

**Frivolous or Malicious Actions**

Assuming, *arguendo*, the court could exercise jurisdiction via Rule 60(b), the cases brought by Alvarez do not rise to the level of "frivolous or malicious" within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i). The statute, which governs proceedings *in forma pauperis* ("IFP"), requires a court to "dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i).

There are parties, plaintiffs and attorneys alike, who abuse the ADA's private right of action by teaming up "for personal monetary gain by filing self-serving, fee-driven lawsuits that often do not advance the rights of individuals with disabilities" but serve as a means to extort allegedly noncompliant businesses. *Id.* at 73. The ADA encourages but does not require plaintiffs to seek informal remedies before filing suit, facilitating this strategy. 28 C.F.R. § 36.506.

One such scenario played out in the District of New Mexico. A single disabled plaintiff and her attorney filed in ninety-nine *in forma pauperis* ("IFP") cases almost identical complaints against places of public accommodation. *Carton v. Carroll Ventures, Inc.*, No. 17-0037, 2017 U.S. Dist. LEXIS 107135, at *2 (D.N.M. July 10, 2017). The court, suspicious, consolidated and referred the cases to a magistrate judge for evidentiary hearings and legal analysis to determine whether the complaints were "frivolous and malicious" within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i). *Id.* at *1. The magistrate found that they were but not based on the sheer number or the same plaintiff and attorney. These cases were tainted by substantive errors and clear misconduct. A litigation funding group backed the lawsuits and paid the plaintiff for her participation. The plaintiff's attorney initially concealed the plaintiff's and her own relationship with the litigation funding group from the court and prepared template complaints prior to the instances of alleged discrimination and often failed to support them with evidence. *Id.* at *8, *18. Furthermore, the plaintiff and her attorney filed IFP even though plaintiff had sufficient funds to pay the court fees, and the court expressly warned them that those fees were not waivable. *Id.* at

*7–8, *21–3. Despite complaints claiming that she had visited every place of public accommodation, the plaintiff visited only some. *Id.* at *14. Usually her driver had already scouted out noncompliance for her to confirm; these visits were more like set-ups than organic discoveries. *Id.* at *14. The court also found that the funding group, not the attorney, drafted the complaints and other documents submitted to the court; the plaintiff was only loosely involved. *Id.* at * 16–20.

Like the plaintiff in *Carton*, Alvarez has filed IFP. In sharp contrast, however, he has only done so twice—one of those instances provided for the possibility of reimbursement for the waiver. Case No. 15-2564, Dkt. 6; Case No. 15-2584, Dkt. 7. In the second case, the motion to proceed IFP was conditioned on "reimbursement of the $400 filling [sic] fee if counsel received compensation under the contingency-fee arrangement." Case No. 15-2584, Dkt. 1. The informal settlement, detailed in emails between counsel, required only physical changes to the facilities and no payment of attorney's fees. As a result, no reimbursement of the court is required. The two IFP filings is one of the only, if not the only, similarity with the plaintiff in *Carton*. That plaintiff could have paid filing fees in every case in which she filed IFP because of the income from the third-party litigation group. Alvarez cannot afford to pay an expert or his attorney. In the absence of IFP approval, Velez pays all costs, including filing fees and expert hourly rates. Alvarez is aware that he requests attorney's fees and costs as permitted under the ADA. *See* 42 U.S.C. § 12188(a)(1) (citing 42 U.S.C. § 2000a-3(b)). Moreover, neither Alvarez nor Velez has a relationship with a third party comparable to the litigation funding group in *Carton.* When Alvarez finds an instance of noncompliance, he tells Velez, and they discuss the lawsuit and the complaint together. It is true that Alvarez and his son had not visited every single one of the establishments before suing for instances of noncompliance. But injury sufficient to confer standing may occur before a plaintiff visits an establishment if the plaintiff is deterred from visiting by existing or imminently threatened noncompliance. *Disabled Ams. For Equal Access, Inc. v. Ferries del Caribe, Inc.*, 405 F.3d 60, 64 (1st Cir. 2005) (citing *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002)). Finally, Alvarez does not receive any monetary or other benefit from acting as plaintiff aside for

In re: Cases Filed under the Americans with Disabilities Act by Jonathan Alvarez-Vega                                                     8

improvements to facility accessibility for his son.

Where Alvarez filed IFP, his conduct still does not rise to the level required by § 1915. The statute does not define "frivolous or malicious," but case law fills the gaps. "A claim is 'frivolous' within the meaning of section 1915[e][1] when it is 'based on an indisputably meritless legal theory,' or makes 'clearly baseless' factual contentions." *Watson v. Caton*, 984 F.2d 537, 539 (1st Cir. 1993) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). In determining frivolousness, the Court warned that the court must resolve reasonable inferences in the plaintiff's favor. *Neitzke*, 490 U.S. at 328. In contrast, a finding of maliciousness requires the court to "engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendants." *Deutsch v. United States*, 67 F.3d 1080, 1086 (3rd Cir. 1995). Malicious is defined as "[s]ubstantially certain to cause injury" and "[w]ithout just cause or excuse." *Black's Law Dictionary* (10th ed. 2014). The First Circuit has defined maliciousness as "having spiteful, malignant purpose." *Welch v. Ciampa*, 542 F.3d 927, 944 (1st Cir. 2008) (internal quotations omitted).

The only possible recourse, if Alvarez brought cases when he technically lacked standing to do so, would be under Rule 60(b). To invoke subsections (3) or (6), however, there must be strong evidence. The First Circuit requires that, when seeking a new trial under Rule 60(b)(3)'s misconduct prong, a movant show by clear and convincing evidence that "misconduct substantially interfered with its ability fully and fairly to prepare for, and proceed at, trial." *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 926 (1st Cir. 1988). Rule 60(b)(6) relief is reserved for "extraordinary circumstances" justifying "extraordinary" relief. See *Valley Citizens for a Safe Env't v. Aldridge*, 969 F.2d 1315, 1317 (1st Cir. 1992). These are high barriers to overcome in normal circumstances. Here, where visiting a public accommodation is not necessary to bring an ADA suit, it is difficult to imagine that those barriers could be surmounted. *See Disabled Ams.*, 405 F.3d at 64. A review

---

[1] 28 U.S.C. § 1915 has been amended. After the passage of the Prison Litigation Reform Act of 1996, § 1915(d) was redesignated as § 1915(e); decisions issued prior to this amendment have been corrected to refer to the court's mandate to dismiss frivolous or malicious actions subsection (e).

of the hearing transcript shows that such clear and convincing evidence supporting "extraordinary relief" would not be available even if the court could, *sua sponte*, invoke Rule 60(b). Accordingly, even if the court finds jurisdiction over these closed cases, the court should find that even where Alvarez is bound by § 1915, he has not brought frivolous or malicious cases under the ADA.

## CONCLUSION

For the reasons stated above, I recommend that the court finds the cases to be neither frivolous nor malicious under 28 U.S.C. § 1915.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 15th day of October, 2018.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge